**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | |
| **DEVELOPMENT,** | § | |
| *Plaintiff,* | § | **6:22-CV-00166-ADA** |
| | § | |
| **-v-** | § | |
| | § | |
| **CANON INC.,  CANON USA, INC.,** | § | |
| *Defendants.* | § | |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendants Canon Inc. and Canon USA, Inc.'s ("Canon") Opening and Reply briefs (ECF Nos. 49 and 88, respectively) and Plaintiff WSOU Investments, LLC's ("WSOU") Response and Sur-Reply briefs (ECF Nos. 63 and 100, respectively).  Canon also filed a supplemental IPR-related brief ("Supp. Br."). ECF No. 103. WSOU responded ("Supp. Response").  ECF No. 111.

The Court provided preliminary constructions for the disputed terms one day before the hearing.  The Court held the *Markman* hearing on June 7, 2023.  ECF No. 134.  During that hearing, the Court informed the Parties of the final constructions for the disputed terms.  *Id.*  This Order does not alter any of those constructions.

## I.     DESCRIPTION OF THE ASSERTED PATENT

WSOU only asserts U.S. Patent No. 7,493,030.  The '030 Patent is entitled "Adaptive optical plane formation with rolling shutter."  The '030 Patent describes methods and optical devices that provide an increased depth of field.  '030 Patent at 1:6–7.  The specification describes that "depth of field" is a "range of distances ($s_O\pm x$) for which focus is acceptably sharp," where $s_O$

1

is the distance to a specific object and where x is the distance from that object. *Id.* at 2:7–8, 1:30–31. In other words, objects within a distance of x of the specific object are in focus while objects further than x from the specific object are not in focus.

The '030 Patent discloses an invention that expands the depth of field by changing the focus during the exposure of a single picture (*i.e.*, "manipulating an optical relationship between an optical lens and an image sensing surface"), such that each part of the sensor is exposed when that part is in focus (*i.e.*, "exposing different portions of the image sensing surface synchronous with" changing the focus). *Id.* at 4:18–22. In other words, the '030 Patent discloses an invention that exposes portions of the image sensing surface while the objects corresponding to those portions are in-focus, and then combining the exposed portions into a single image with a wide depth of field. *Id.* at 4:17–28.

## II.    LEGAL STANDARD

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution.

*Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not

generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

## III.    LEGAL ANALYSIS

### A. Terms #1, #2, #3: "different portions of the [image] sensing surface" / "a [first/second] portion of an image sensing surface" / "exposing different portions of the [image] sensing surface"

| Term | WSOU's Proposed Construction | Canon's Proposed Construction |
|---|---|---|
| #1: "different portions of the [image] sensing surface"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3, and 15<br><br>Proposed by Canon | Plain and ordinary meaning | "portions of the image sensing surface that are exposed at different times during an exposure of the image sensing surface" |
| #2: "a [first/second] portion of an image sensing surface"<br><br>U.S. Patent No. 7,493,030, Claim 11 | Plain and ordinary meaning | Respectively, "a first portion of the image sensing surface that is exposed at a different time than the second portion," and "a second portion of the image sensing surface that is |

| Proposed by Canon | | exposed at a different time than the first portion" |
|---|---|---|
| #3: "exposing different portions of the [image] sensing surface"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3, and 15<br><br>Proposed by Canon | Plain and ordinary meaning | "in a single exposure of the entire image sensing surface, exposing one portion of the image sensing surface while not exposing another portion of the image sensing surface, then exposing the other portion" |

**The Parties' Positions:**

Canon contends that "exposing different portions of the image sensing surface" means that "the portions must be separately exposed [1] at different times and [2] with different focus settings during a single exposure of the entire image sensing surface to create an output image with increased [depth of field]."  Opening at 9 (annotations added).  Canon contends that WSOU's position is that "exposing different portions" "can apply to portions of the image sensor that are exposed [1] together [2] with the same focus and exposure settings."  *Id.* (annotations added). Canon contends that the:

> **only** way for the claims to present an advancement over the prior art discussed in the patent is for the claimed exposure of different portions to both: (1) describe the exposure of a single image; and (2) describe portions that are independently exposed at different times with different focus and/or exposure settings.

*Id.* at 9–10 (citing Lebby declaration at  ¶¶ 78–89) (emphasis in Canon's brief).

With respect to the first issue, Canon contends that if the "claimed exposure of different portions does not occur during the exposure of a single image, it would describe the method of the [U.S. Patent No. 5,282,045] patent that the '030 patent criticized," which takes multiple images using different focus settings and then combines those images together.  *Id.* at 10.  Canon contends that the "only way" for the '045 prior art patent to be different from the claimed invention is if the

original images in the '045 prior art patent were taken as an "independent *different exposure* of the image sensing surface as a whole." *Id.* at 10–11 (emphasis in Canon's brief). Canon contends that construing a claim broadly, *e.g.*, Claim 1, would mean that the claim "would cover 'different portions' from different full exposures of the image sensing surface [which] would be contrary to the intrinsic evidence and would simply describe the Background prior art (*i.e.*, the '045 patent)[.]" *Id.* at 11.

With respect to the second issue, Canon contends that "the claimed requirement of 'exposing different portions' relates to portions that are exposed 'differently' (*i.e.*, with different lens focus settings) because the purpose of the invention is to separately expose portions with different settings to create a wider [depth of field] without the need to composite full images." *Id.* Canon contends that "[d]ifferent portions of the image sensor, such as two pixels, that are exposed simultaneously with the same focus setting cannot be used to increase the [depth of field] as described by the '030 patent." *Id.*

Canon contends that the '030 Patent distinguished prior art U.S. Patent No. 6,738,068, the latter of which "does not disclose 'exposing different portions' as described by the '030 patent because its strips are all exposed simultaneously." *Id.* at 11–12. In other words, Canon contends that "the '030 patent distinguishes itself from the '068 patent because it independently exposes some portions of the image sensing surface while not exposing other portions, whereas the '068 patent exposes all three of its portions [] *at the same time*." *Id.* at 12 (emphasis in Canon's brief). Based on that, Canon contends that "a construction requiring that the claimed 'portions' of the image sensing surface be separately exposed *at different times* during a *single exposure* of the image sensing surface as a whole is necessary to differentiate the Background prior art discussed throughout the '030 patent." *Id.* (citing cases) (emphasis in Canon's brief).

In its response, WSOU contends that "there is simply no dispute that the plain and ordinary meanings of these "portion[s] of the [image] sensing surface" claim terms would have been clear to a [POSITA]."  Response at 3.  More specifically, WSOU contends that a "POSITA would have understood from the claims alone what an 'image sensing surface' is, what 'portions of' an image sensing surface refers to, and what 'different' and 'first'/'second' portions mean."  *Id*.

WSOU contends that Canon proposes constructions that are different constructions for "near-completely overlapping" claim phrases.  *Id.* at 4.  WSOU contends that a jury would "would have no idea how to interpret or apply the claim phrase 'different portions of the [image] sensing surface' because it would have two different meanings."  *Id.*

With respect to the first difference, *i.e.*, whether the portions are exposed "at different times," WSOU contends that the "claims themselves already address the temporal aspects of exposing different portions of an image sensing surface and, notably, do not require exposing each portion of the image sensing surface at different, non-overlapping times or while not exposing another portion of the image sensing surface."  *Id.*  More specifically, WSOU contends that the claims require exposing different portions for "different exposure periods."  *Id.* at 4–5.  WSOU contends that the specification makes clear that the "exposure/integration periods for different sets of pixels (portions) of the image sensing surface can overlap while having different start and/or end times."  *Id.* at 5 (citing '030 Patent at 7:4–27).

WSOU contends that the specification "does not preclude exposing other portions of the image sensing surface."  *Id.* (quoting '030 Patent at 10:18–37; citing Ducharme Declaration at ¶ 62).

WSOU contends that Canon fails to satisfy the "exacting" standard required for disavowal.  *Id.* at 6.  More specifically, WSOU contends that because the specification describes embodiments

that Canon's proposed construction excludes, Canon has not shown that there is a clear and unmistakable disclaimer. *Id.* (citing *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011)).

WSOU contends that Canon based its disavowal arguments based on mischaracterizations of the differences between the '030 Patent and the'045 and '068 prior art patents. *Id.* With respect to the '045 prior art patent, WSOU contends that end image was created by combining multiple images, each of which was "taken as an independent different exposure of the image sensing surface <u>as a whole</u>," while the claimed invention exposes "<u>different portions</u> of the image sensing surface … for different exposure periods[.]" *Id.* at 7. (emphasis in WSOU's brief). With respect to the '068 prior art patent, WSOU contends that Canon's argument that the "'030 Patent distinguishes itself from the '068 patent because it independently exposes some portions of the image sensing surface while not exposing other portions, whereas the '068 patent exposes all three of its portions [] at the same time" is "meritless." *Id.* More specifically, WSOU contends that the claims of the '030 Patent "already recite, for example, 'exposing different portions of the image sensing surface synchronous with manipulating the optical relationship by adaptively exposing said portions for different exposure periods based on detected [movement/brightness] of at least two objects' ('030 Patent at claims 1, 3), which was not taught in the '068 patent." *Id.* WSOU contends that the claims do not support "while not exposing another portion of the image sensing surface, then exposing the other portion" in Canon's proposed construction. *Id.*

In their reply, Canon contends that the parties do not dispute that the '030 patent is directed towards increasing the depth of field or that the specification criticized prior art solutions that expended the depth of field by combining multiple images together. Reply at 1. Canon contends that the "fundamental distinction of the '030 patent over the background prior art is embodied in

the claims through the limitation 'exposing different portions of the image sensing surface,' which requires different portions of the image sensing surface to be exposed differently." *Id.* at 2.  Canon contends that WSOU, inconsistently so, argued that this limitation "covers a single exposure of the entire image surface, which, according to WSOU, would inherently expose different portions of the surface[.]" *Id.*  As such, Canon contends that WSOU "effectively reads the limitation out of the claim because ***any*** single exposure of the whole picture will necessarily be an exposure of different parts of the whole." *Id.* at 3 (emphasis in Canon's brief).

Canon contends that WSOU inconsistently argues that the "exposing different portions" limitation requires either that (1) the differently exposed features of Canon's proposed construction to address prior art (*i.e.*, not exposing the different portions at the same time) or (2) that the limitation is met when different portions that are exposed at the same time. *Id.* at 3–4.  Canon contends that because both of these interpretations could be the plain-and-ordinary meaning of this term, a plain-and-ordinary construction is insufficient to resolve the dispute between the parties. *Id.* at 4.

With respect to WSOU's argument that the claim already requires a temporal limitation (different exposure periods), Canon contends that this claim language only requires that the portions are exposed for different ***amounts of time*** and not if different portions are exposed at the same or different times.  *Id.* (emphasis in Canon's brief).  With respect to WSOU's reliance on "rolling exposure" ('030 Patent at 7:4–27), Canon contends that that passage is not relevant as "changing the focus of the camera while exposing…would lead to blurry images (not increased depth of field) for any portion of the sensor exposed while the focus was shifted." *Id.* at 5.  With respect to WSOU's argument that the specification "does not preclude exposing other portions of the image sensing surface," Canon again contends that the argument is meritless because the

specification "explicitly says that the same pixels are not re-exposed because the voltage for the pixels are read out once before any further exposure, which would otherwise create a distorted double image." *Id.* (citing '030 Patent at 10:18–37).

In its sur-reply, with respect to "at different times" in Canon's proposed construction, WSOU contends that Claims 1 and 3 already contain a explicit time-related limitation ("for different exposure periods") and Canon does not offer any justification for adding another. Sur-Reply at 2.

WSOU contends that Canon's "arguments based on the prior art patent discussed in the '030 Patent's specification are meritless." *Id.* More specifically, with respect to the '045 prior art patent, WSOU contends that combining multiple images

> did not involve, for example, "exposing different portions of the [image] sensing surface synchronous with manipulating the optical relationship [between the optical lens and image sensing surface]," as already required in claims 1, 3, and 15, or exposing first and second portions of an image sensing surface "within a continuous exposure frame" as already required in claim 11.

*Id.* WSOU contends that the '068 prior art patent

> did not involve, for example, "adaptively exposing [different] portions [of the image sensing surface] for different exposure periods" as already required in claims 1 and 3; exposing first and second portions of an image sensing surface "within a continuous exposure frame" as already required in claim 11; or "during an exposure frame period, maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface" as already required by claim 15.

*Id.* at 2–3.

WSOU contends that "at different times" in Canon's proposed construction "exclude[s] the expressly disclosed embodiments of the invention, for example, where 'exposure time may be initiated at the same time for all … sets of pixels [*i.e.*, all portions of the image sensing surface] and terminated (by readout) at different times.'" *Id.* at 3 (citing '030 Patent at 7:25–27). WSOU

contends that Canon's only argument on this point is their "*ipse dixit*" argument that the embodiment would not be optimal.  *Id.* at 4.

Finally, with respect to Canon's "rolling exposure" argument, WSOU contends that the full paragraph that Canon cites ('030 Patent at 10:18–37) "clearly allows for multiple-exposure of portions of the image sensing surface, and proposes ways to avoid any potentially negative effects from exposing a portion of image sensing surface more than once."  *Id.*

In its supplemental brief, Canon contends that WSOU, in its Patent Owner's Preliminary Response (POPR), took a contradictory position to the position in advances now.  Supp. Br. at 4. In particular, Canon contends that while WSOU argued in its Response that "the patent does not require the entire image sensing surface to be exposed only 'once,'" it argued in its POPR that "***once surface area 401 has already been fully exposed***—without the claimed adaptation—***it would be too late to adapt different exposure periods for different portions*** based on the detected movement."  *Id.* at 3 (quoting POPR at 18 (emphasis in Canon's brief)).

In its supplemental response, WSOU contends that Canon takes the above POPR quote out of context.  Supp. Response at 3.  More specifically, WSOU contends that the above statement was made regarding why there was no reason to combine different prior art references.  *Id.*  WSOU further contends that there is no inconsistency between its positions because "full exposure" has a different meaning than "single exposure."  *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with WSOU that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according

to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  **Second**, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

   **Third**, with respect to the first dispute (whether the portions must be separately exposed at different times), nothing in the plain meaning of "exposing different portions" requires that the portions must be exposed at "different times."  In other words, "exposing different potions" only imposes a spatial requirement as to what needs to be exposed and not a temporal one as Canon advocates.

   **Fourth**, the claims, *e.g.*, Claims 1 and 3, already recite temporal-related limitations ("different exposure periods").  This indicates that while the patentee knew how to draft the claims to include a temporal limitation, the patentee did not choose to include the temporal limitation of "at different times" in these claims.  As such, the Court concludes it is improper to include "at different times" in Canon's proposed construction.

   **Fifth**, "at different times" in Canon's proposed construction improperly excludes an embodiment.  More specifically, the specification describes an embodiment where the exposure and integration times are different for one portion of an image as compared to two other portions of the image.  *See, e.g.*, '030 Patent at 7:20–23 ("so that exposure/integration is begun at a different time for the first set as compared to the second and third sets").  Canon does not appear to respond—let alone meaningfully—to this argument.

   **Sixth**, with respect to the '045 prior art patent, the Court concludes that the patentee did not disclaim using different exposures during prosecution based on this particular prior art

reference.  More specifically, the '045 prior art patent discloses combining multiple whole images.

'045 Patent at Figure 1 (depicting combining Image 1 and Image 2 to create Image 3), 4:21–27.



By contrast, the claim language describes exposing "different portions of the image sensing surface," and not exposing multiple images.  *See, e.g.*, '030 Patent, Claim 1.  Therefore, the Court disagrees with Canon that the patentee distinguished the '045 prior art patent by arguing that the "image sensing surface must be exposed during a ***single exposure*** of the image sensing surface as a whole."  Opening at 11 (emphasis in Canon's brief).

**Seventh**, with respect to the '068 prior art patent, the Court concludes that the patentee did not disclaim "at the same time" during prosecution based on this particular prior art reference.  More specifically, the '068 prior art patent discloses exposing multiple objects in a single

exposure.  Opening at 11–12 (citing '068 Patent at 4:51–62).  But the claim language in the '030 Patent only requires "exposing different portions of the image sensing surface synchronous with manipulating the optical relationship by adaptively exposing said portions for different exposure periods based on detected movement of at least two objects."  '030 Patent, Claim 1.  In other words, the plain claim language of the '030 Patent does not require exposing different portions at different times; rather, the claim language only requires "adaptively exposing [different] portions for different exposure periods."  The Court notes that Canon does not respond at all to this particular argument.  *See* Reply at 1–5.

*Eighth*, with respect to Canon's argument in its supplemental brief, the Court agrees with WSOU that the POPR statement that Canon quotes described that two prior art references could not be combined and not whether the patent required the entire image sensing surface to be exposed only once.  POPR at 32–33.  Furthermore, even if the statement was made to interpret the scope of this term, the POPR statement uses the words "full exposure" and not "single exposure" as recited in Canon's proposed construction.  *Id.* at 32.  Given that difference in wording, the Court declines to adopt Canon's "single exposure" wording.

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.[1]

**B.  Terms #4, #5: "exposing different portions of the image sensing surface synchronous with manipulating the optical relationship" / "maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface"**

---

[1] While Canon argues that the Court needs to construe this term pursuant to *O2 Micro*, the Court disagrees that it needs to construe what the plain-and-ordinary meaning of this term is because Canon's proposed construction is not an "ordinary" construction.  *O2 Micro* at 1361.  Because Canon has not shown that there is more than one ordinary meaning and because plain-and-ordinary meaning appears to resolve the parties' dispute, the Court declines to further construe what the plain-and-ordinary meaning.  *Id.*

14

| Term | WSOU's Proposed Construction | Canon's Proposed Construction |
|---|---|---|
| #4: "exposing different portions of the image sensing surface synchronous with manipulating the optical relationship"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3<br><br>Proposed by Canon | Plain and ordinary meaning | "exposing different portions of the image sensing surface and controlling the optical relationship based on the exposure area, at the same time as and based on the changing of the exposure area" |
| #5: "maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance, while controlling the exposure to expose each portion of the image sensing surface while it is in focus" |

**The Parties' Positions:**

Canon contends that "the purported advancement of the '030 patent is to change the focus during a single exposure of the entire image sensing surface to set different focus distances for objects in different portions and to selectively expose the portion of the sensor corresponding to the portion of the scene currently in focus," which "requires 'synchronizing' the focusing of the lens on part of the scene and exposing only the portion of the image sensing surface that is currently in focus and repeating this for other objects."   Opening at 14.   Canon contends that if the "'synchronous with' limitations are not construed to require controlling the combination of focus and exposure of a limited portion of the sensor, such that the area in focus coincides with the limited area being exposed, the claims are not supported by the written description."   *Id.*

15

Canon contends that extrinsic evidence (dictionary definitions) supports its proposed construction. *Id.* at 15.

In its response, WSOU contends that Canon improperly substitutes "control" for "manipulating" in Claims 1 and 3 and "maintaining" in Claim 15. Response at 8. WSOU contends that there is no need to construe those terms as a POSITA would understand the plain meaning of those words and because Claims 21 and 22 usage of "controls" indicates that the patentee specifically chose to use "manipulating" and "maintaining," instead of "controlling." *Id.* at 8–9.

WSOU contends that Canon improperly construes "synchronously" to mean "at the same time," when it relates to the broader concept of coordination. *Id.* at 9. On this point, WSOU contends that Canon's dictionary definitions and Canon's expert indicate that "synchronous" does not require actions occurring at the same time. *Id.* (citing Lebby declaration at ¶ 94).

WSOU contends that Canon confusingly construes "synchronous with manipulating the optical relationship" with the convoluted phrase "and controlling the optical relationship based on the exposure area, at the same time as and based on the changing of the exposure area." *Id.* WSOU contends that this phrase improperly uses the word "controlling" as described above. WSOU contends that this phrase also requires that the "controlling" be "based on the exposure area," which is not supported by the intrinsic record as the specification does not use the words "exposure area." *Id.* at 9–10.

With respect to Claim 15, WSOU contends that Canon "replace[s] the claim language 'synchronously with exposing different portions of the sensing surface' with 'while controlling the exposure to expose each portion of the image sensing surface while it is in focus.'" *Id.* at 10. WSOU contends that this is improper because while the specification uses the word "focus," the claims do not. *Id.* Rather, WSOU contends that "claims 1, 3, and 15 are written in terms of

manipulating or maintaining an 'optical relationship' and/or 'effective image distance' between a lens and image sensing surface[.]" *Id.*

In their reply, Canon contends that the claimed invention obtains an increased depth of field by coordinating different exposures with changing the focus.  Reply at 6.  Canon contends that this approach "allows different portions of a captured image to have different focus distances without compositing together separate images." *Id.*  Canon contends that construing this term "without the context of the intrinsic record would lead to absurd results, covering synchronous relationships having nothing to do with the claimed invention." *Id.*

Canon contends that their proposed construction does not require that "synchronous" things must happen at the same time. *Id.* at 7.  Canon contends that their proposed construction "merely requires the exposure to change with the focus such that the area in focus and the area to be exposed are coordinated[.]" *Id.*  Canon contends that WSOU's expert testified that "synchronously" means "in coordination with." *Id.* (citing Ducharme deposition at 100:25–101:2, 101:12–15, 102:15–20).  Canon contends that WSOU has not pointed to an disclosure in the patent that "supports achieving the patent's stated purpose of increasing the depth of field without coordinating changing the focus and the exposure." *Id.*

With respect to using "controlling," Canon contends that WSOU does not "dispute that there is no meaningful difference between 'manipulating' and 'maintaining,' as used in the claims, and 'controlling[.]'" *Id.*

In its sur-reply, WSOU contends that Canon fails to address or misrepresent the deficiencies WSOU identified in its Response.  Sur-Reply at 5.  For example, WSOU contends that Canon does not dispute that their proposed construction adds in an entire new claim step ("and controlling the optical relationship based on the exposure area, at the same time as and based on

the changing of the exposure area") for Claims 1 and 3.  *Id.*  With respect to Canon's argument that "synchronously" does not require that things happen at the same time, WSOU contends that Canon's proposed construction requires exactly that ("at the same time as" for claims 1 and 3, and "while" for claim 15).  *Id.* at 6.  With respect to Claim 15, WSOU contends that none of the claims describe the invention using the word "focus."  *Id.*  WSOU contends that Canon's expert agrees that "focus" is subjective, which is improper as the Federal Circuit has consistently rejected claim constructions that include subjective elements.  *Id.* (citing cases).

In its supplemental brief, Canon contends that WSOU, in the POPR, "admits its claims are, in fact, limited" to the scope described in Canon's proposed construction.  Supp. Br. at 5.  Canon first asserts that "WSOU argues in its POPR that the claims must be practiced in a single exposure, during which the claimed synchronization must occur."  *Id.* (citing POPR at 18, 14, 25).  Canon further asserts that "WSOU also argues that the claims require 'detecting multiple moving objects *at once*,' while synchronously exposing different portions of the image sensing surface based on the detected characteristics of different objects."  *Id.* (citing POPR at 21 (emphasis added)).  *Id.*  Canon finally asserts that "WSOU argues throughout its POPR that claims 11 and 15 require a single, 'uninterrupted' exposure, during which the focus is changed."  *Id.* (citing POPR at 7–9, 44–46).

In its supplemental response, WSOU contends that Canon's new argument that "synchronously" occurs during a single exposure.  Supp. Response at 4.  WSOU contends that Canon previously took the opposite position by "claiming that 'synchronously with' entailed 'exposing different portions of the image sensing surface and controlling the optical relationship based on the exposure area…'"  and that "single exposure" "is at odds with prior construction that described exposing multiple, plural 'portions.'"  *Id.*

18

With respect to the "fully exposed" passages from the POPR that Canon cites, WSOU contends that Canon took these passages out of context. *Id.* at 5. In particular, WSOU contends that these passages are directed towards why there was no reason to combine different prior art references. *Id.* WSOU also contends that "Canon's reliance on the 'uninterrupted' statement improperly conflates uninterrupted or continuous with a 'single.'" *Id.* (internal quotation marks reformatted, internal citations omitted). Finally, WSOU contends that "Canon misreads 'detecting multiple moving objects at once' which relates to an entirely different limitation. The words 'at once' refer to the multiple objects that are moving—not a single exposure." *Id.* (internal quotation marks reformatted, internal citations omitted).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with WSOU that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. *Second*, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

*Third*, Defendants' proposed construction improperly requires that "synchronously" means "at the same time," but that is narrower than the plain-and-ordinary meaning which includes "in coordination with."

The Court notes that the dictionary definitions that Canon's expert cites supports that the plain-and-ordinary meaning of "synchronously." More specifically, the 2002 Dictionary of

19

Science Engineering and Technology defines "synchronous" as "pertaining to two or more processes whose interaction depends upon the occurrence of a specific global event such as a common timing signal," while the 2004 McGraw-Hill Dictionary of Electrical and Computer Engineering defines "synchronous" as "in step or in phase, as applied to two or more circuits, devices, or machines."  Lebby Declaration at ¶ 94.  Neither of these definitions describes that the events must occur at the same time," but rather that they occur "in step or in phase" or based on a "common timing signal."  In other words, these definitions allow that the synchronization between two things may be synchronized such that one event is synchronized to occur after some delay, *i.e.*, not at the same time.

**Fourth**, the Court concludes that Canon improperly changes "manipulating" and "maintain" to "controlling."  Because different words are presumed to have different meanings, the Court concludes that, at worst, this changes the claim scope.  *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006) ("… each [claim] term is presumed to have a distinct meaning.").  At best, using different words unnecessarily paraphrases the claim term.  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

**Fifth**, the Court concludes that Canon's proposed construction improperly adds an extra step of "and controlling the optical relationship based on the exposure area, at the same time as and based on the changing of the exposure area."  The word "synchronously" only describes a temporal element and does not describe "controlling" based on anything.  The Court notes that Canon does not appear to dispute this.

20

***Sixth***, for Claim 15, Canon's proposed construction uses the word "focus," which is different than the words in the claim. *Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). More specifically, Claims 1 and 3 use the phrase "manipulating the optical relationship" while Claim 15 uses the phrase "maintaining an image sensing surface at a variable effective image distance from a lens," instead of the word "focus."

***Seventh***, with respect to Canon's argument in its supplemental brief, the Court agrees with WSOU that the POPR statements that Canon quotes or cites describe that two prior art references could not be combined and not whether the claims require a "single exposure." POPR at 18, 14, 25.

The Court also agrees with WSOU that Canon improperly conflates "uninterrupted" or "continuous" with "single." For example, a "continuous" exposure where different portions of the image sensor are exposed at different—possibly overlapping—times is not the same as a single exposure where all image sensors are exposed at the same time.

The Court additionally agrees with WSOU that the "at once" passage Canon cites relates to a different limitation ("based on detected movement of at least two objects") and not this specific claim term ("exposing different portions of the image sensing surface synchronous with manipulating the optical relationship" and "maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface").

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

**C. Terms #6, #7: "manipulating an optical relationship between an optical lens and an image sensing surface so that the image sensing surface is spaced at different effective image distances from the lens" / "maintaining an image sensing surface at a variable effective image distance from a lens …"**

| Term | WSOU's Proposed Construction | Canon's Proposed Construction |
|---|---|---|
| #6: "manipulating an optical relationship between an optical lens and an image sensing surface so that the image sensing surface is spaced at different effective image distances from the lens"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3<br><br>Proposed by Canon | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance" |
| #7: "maintaining an image sensing surface at a variable effective image distance from a lens …"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon<br>s | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance…" |

**The Parties' Positions:**

Canon contends that the claim terms are "cumbersome" and "overly technical," so the Court should construe them. Opening at 16–17. Canon contends that the patent "explains this plainly with respect to focusing on the objects at different distances." *Id.* at 16 (citing Figures 10A, 10B; 10:64–67, 11:8–25, 8:7–13, 8:25–31).

In its response, WSOU contends that a POSITA would understand the plain-and-ordinary meaning. Response at 11. Although Canon contends the claim term uses "overly technical" terms,

WSOU contends that Canon does not identify a single term that is overly technical. *Id.*  WSOU contends that, by contrast, the claim term "only uses words that a jury will be able to understand during trial." *Id.*  Although Canon contends that the claim term is "cumbersome," Canon's proposed construction is nearly as long as or longer than the claim term. *Id.* at 11–12.

WSOU contends that Canon "seeks to rewrite the claim language in terms of 'focus'—a word used in the '030 Patent's specification but not found in any of its claims." *Id.* at 12.

WSOU finally contends that Canon's proposed construction is "problematic because the claims do not require controlling the focus of the lens or image only by moving the lens.  Rather, the express language of the claims is written in terms of manipulating or maintaining an 'optical relationship' and/or 'distance' between a lens and image sensing surface." *Id.*

In their reply, Canon contends that WSOU has not shown that these terms have a plain-and-ordinary meaning and that WSOU's expert could not articulate what the terms mean.  Reply at 8 (citing Ducharme deposition at 26:17–24, 62:13–22).

Canon contends that "[t]here is no legitimate dispute that the effective image distance terms relate to changing the focus of the lens." *Id.*  Canon contends that WSOU's expert "agreed that the effective image distance refers to controlling the focus to capture a particular object." *Id.*

Canon contends that WSOU incorrectly asserts that Canon's proposed construction requires "controlling the focus of the lens or image only by moving the lens" and excludes embodiments where the surface is moved. *Id.* at 9.  Rather, Canon contends that "controlling the focus of a lens to bring different portions of the image sensing surface into focus" allows "moving either the lens or surface to achieve the proper focus." *Id.*

In its sur-reply, WSOU contends that Canon seeks to "rewrite the claim language in terms of 'focus.'"  Sur-Reply at 7.  WSOU contends that none of the claims use the word "focus," and

Canon's expert "believes that the concept of whether something is in or out of focus is 'subjective.'" *Id.* (citing Lebby deposition at 20:20–22:25).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with WSOU that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. *Second*, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

*Third*, the Court disagrees with Canon that the claim term is "cumbersome" or is "overly technical." Rather, the Court concludes that a POSITA would understand the words of this claim term. *Phillips*, 415 F.3d at 1313. Furthermore, the Court concludes that nothing in the claim language is overly technical that warrants providing a construction to aid a jury. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The district court simply must give the jury guidance that can be understood and given effect by the jury once it resolves the issues of fact which are in dispute.").

*Fourth*, the Court agrees with WSOU that Canon's proposal is incorrect because the claims do not require controlling the focus of the lens; rather, the claims require "manipulating the optical relationship" and "maintaining an image sensing surface at a variable effective image distance." *Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct

construction.").  At best, Canon's proposed construction unnecessarily paraphrases the claim term. *U.S. Surgical Corp*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

### D.  Terms #8, #9: "within a continuous exposure frame" / "during an exposure frame period"

| Term | WSOU's Proposed Construction | Canon's Proposed Construction |
|---|---|---|
| #8: "within a continuous exposure frame"<br><br>U.S. Patent No. 7,493,030, Claim 11<br><br>Proposed by Canon | Plain and ordinary meaning | "within the period from the start of an exposure of the imaging sensing surface until the entire image sensing surface is exposed once" |
| #9: "during an exposure frame period"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon | Plain and ordinary meaning | "during the time over which the entire image sensing surface is exposed once" |

**The Parties' Positions:**

Canon contends that "allowing these portions to be exposed in separate pictures would cover the Background prior art (e.g., the '045 patent) that the '030 patent expressly distinguished."

Canon contends that the '030 patent defines the term to have that definition: "FIG. 8 illustrates the condition where the lens 38 moves continuously in one direction during a single frame period…. A single frame period is the continuous exposure time over which any of the entire array of pixels or plate of film is exposed." *Id*. (quoting '030 Patent at 9:20–25). Canon contends that the specification describes there are multiple ways to change the optical relationship "during the imaging of a single scene in a single, continuous exposure of the sensing surface." *Id.* (quoting '030 Patent at 13:48-57).

Canon contends that dictionary definitions for "exposure" "corroborate the '030 patent's explanation that a continuous exposure frame corresponds to one single exposure of the entire image sensing surface." *Id.* at 19.

With respect to Claim 15, Canon contends that WSOU's infringement contentions apply the Canon's proposed construction. *Id.* at 20.

In its response, WSOU contends that the plain and ordinary meaning would have been clear to a POSITA at the time of the invention. Response at 13. WSOU contends that "a POSITA would understand from the claim language that a 'continuous exposure frame' in claim 11 and an 'exposure frame period' in claim 15 include the time during which different portions of the image sensing surface are exposed." *Id.* at 14.

WSOU contends that Canon's proposed construction with respect to "continuous exposure frame" in claim 11 and an "exposure frame period" in claim 15 is inconsistent with the specification. *Id.* More specifically, WSOU contends that the specification describes that "[a] single frame period is the continuous exposure time over *which any of the entire array of pixels or plate of film is exposed*." *Id.* (quoting '030 Patent at 9:19–25 (emphasis added)). WSOU

contends that "the patent plainly does not require exposure of the ***entirety*** of the image sensing surface." *Id.* at 15 (emphasis added).

WSOU contends that "the patent does not require the entire image sensing surface to be exposed only 'once[.]'" *Id.* More specifically, WSOU contends that the specification discloses an embodiment that describes that the controlling electronics can ignore further decay associated with further exposure of a pixel. *Id.* (quoting '030 Patent at Figure 8, 10:22–37, 10:28–31).

In their reply, Canon contends that WSOU has not shown that these terms have a plain-and-ordinary meaning and that Canon contends that WSOU's expert "admitted he would need to do an analysis to form an opinion to know what they mean." Reply at 9–10 (citing '030 Patent at 145:8–15, 148:25–149:11, 144:5–20, 147:22–148:5, 150:5–151:22, 154:15–155:16).

Canon contends that WSOU's alternative proposed construction ("period in which the portions of the image sensing surface are exposed") reads out the time those exposures occurred. *Id.* at 10.

Canon contends that it is "directly inconsistent with Fig. 8 to construe the frame period to mean the time when a single pixel is exposed." *Id.*

In its sur-reply, WSOU contends that Canon's proposed construction improperly attempts to import a limitation that requires "the entire image sensing surface is exposed once." Sur-Reply at 7–8. WSOU contends that Canon's expert states that the '030 patent at 9:20–25

> defines "continuous exposure frame" to mean "the continuous exposure time over which ***any of the entire*** array of pixels or plate of film is exposed," but nevertheless opines that the claim term "continuous exposure frame" should be construed to refer to the time over which "***the entire*** image sensing surface is exposed once."

*Id.* at 8 (citing Lebby declaration at ¶ 104, Lebby deposition at 77:15–80:15) (emphasis in WSOU's brief). WSOU contends that Canon's proposed construction narrows the claim term from allowing exposure of ***any*** of the entire array of pixels to all pixels ("entire image").

In their supplemental brief, Defendant contends that WSOU, in its Response, argues that the '030 Patent "does not require the entire image sensing surface to be exposed only 'once,'" and that WSOU takes a very different position in its Patent Owner Preliminary Response. Canon's Supp. Br. at 1. More specifically, Defendant contends that WSOU argued that Claim 11's limitation of "'within a continuous exposure frame' requires a single, 'uninterrupted' exposure of the entire image sensor surface." *Id.* Defendant contends that this argument also applies to Claim 15 because WSOU has consistently interpreted Claims 11 and 15 to have the same scope. *Id.* at 2.

Defendant contends that WSOU, in its Response, argues that while "within a continuous exposure frame" simply means "the time during which different portions of the image sensing surface are exposed," WSOU's plain-and-ordinary meaning construction "says nothing about whether the exposure must be a single, 'uninterrupted' exposure[.]" *Id.* Defendant contends that WSOU's IPR position is also inconsistent with its alternative proposed construction ("period in which the portions of the image sensing surface are exposed") in this case. *Id.*

In its supplemental response, WSOU contends that the statements Canon cites in their Supplemental Brief do not support their position because WSOU in the POPR (1) applied Canon's proposed construction and (2) Canon disregarded the word "continuous." Supp. Response at 2 WSOU contends that the passages from the POPR that Canon cites clearly describe that WSOU is applying Canon's proposed construction. *Id.*

WSOU contends that Canon improperly conflates "uninterrupted" or "continuous" exposure with "single" exposure. More specifically, WSOU contends that "single" is not coextensive with "continuous" and that Canon cites to an embodiment where the shutter rolls back and forth, which indicates that the exposure is not limited to a "single" exposure. *Id.*

28

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with WSOU that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  *First*, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  *Second*, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

*Third*, the claim language describes what occurs during the "continuous exposure frame" in Claim 11 and an "exposure frame period" in claim 15.  With respect to the former, Claim 11 describes that a first and second portion of the image sensing surface is exposed using a first and second effective image distance from the lens, respectively.  '030 Patent, Claim 11, Limitations [c]–[e].  The claim goes on to require that the exposed first and second portions are combined into a single image.  *Id.*, Claim 11, Limitations [d]–[e].  With respect to the latter, Claim 15 requires something similar.  *Id.*, Claim 15, Limitation [a] ("maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface").  But neither claim expressly requires that "entire image sensing surface is exposed once" as required by Canon's proposed construction.

*Fourth*, the Court concludes that Canon's proposed construction is inconsistent with the disclosure in the specification, in terms of whether the entire array needs to be exposed.  More specifically, the specification describes that "[a] single frame period is the continuous exposure time over which ***any of the entire array of pixels … is exposed***."  '030 Patent at 9:19–25 (emphasis

added).  But Canon's proposed construction requires that the ***entire image sensing surface be exposed***, which improperly excludes a disclosed embodiment.  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . . where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary.").

***Fifth***, the Court concludes that Canon's proposed construction—which requires that the entire image sensing surface to be exposed only "once"—is inconsistent with the disclosure in the specification.  More specifically, in addition to the above passage that describes that some areas of the array of pixels does not need to be exposed at all, the specification describes that some portions of the array of pixels may be "further expos[ed]," *e.g.*, exposed more than once, but that the controlling electronics can ignore further decay associated with further exposure of a pixel. '030 Patent at 10:28–31.

***Sixth***, with respect to Canon's POPR-related arguments, the Court agrees with WSOU that the passages Canon cites do not support Canon's position because WSOU, in those passages, applied Canon's proposed construction.  *See, e.g.*, POPR at 44 ("***According to Petitioner***, the claimed 'exposure frame' must extend from 'the start of an exposure of the imaging sensing surface until the entire image sensing surface is exposed once.'").  Therefore, WSOU's POPR statements do not support adopting Canon's proposed construction.

***Seventh***, as described in connection with Terms #4 and #5, the Court also agrees with WSOU that Canon improperly conflates "uninterrupted" or "continuous" with "single" in its supplemental brief.  Rather, as described above, the plain meaning of "uninterrupted" or "continuous" is not coextensive with the plain meaning of "single."

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

## IV.    CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 26th day of October, 2023.

.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

31

| Term | WSOU's Proposed Construction | Canon's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: "different portions of the [image] sensing surface"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3, and 15<br><br>Proposed by Canon | Plain and ordinary meaning | "portions of the image sensing surface that are exposed at different times during an exposure of the image sensing surface" | Plain-and-ordinary meaning. |
| #2: "a [first/second] portion of an image sensing surface"<br><br>U.S. Patent No. 7,493,030, Claim 11<br><br>Proposed by Canon | Plain and ordinary meaning | Respectively, "a first portion of the image sensing surface that is exposed at a different time than the second portion," and "a second portion of the image sensing surface that is exposed at a different time than the first portion" | Plain-and-ordinary meaning. |
| #3: "exposing different portions of the [image] sensing surface"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3, and 15<br><br>Proposed by Canon | Plain and ordinary meaning | "in a single exposure of the entire image sensing surface, exposing one portion of the image sensing surface while not exposing another portion of the image sensing surface, then exposing the other portion" | Plain-and-ordinary meaning. |

| Term | WSOU's Proposed Construction | Canon's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #4: "exposing different portions of the image sensing surface synchronous with manipulating the optical relationship"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3<br><br>Proposed by Canon | Plain and ordinary meaning | "exposing different portions of the image sensing surface and controlling the optical relationship based on the exposure area, at the same time as and based on the changing of the exposure area" | Plain-and-ordinary meaning. |
| #5: "maintaining an image sensing surface at a variable effective image distance from a lens synchronously with exposing different portions of the sensing surface"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance, while controlling the exposure to expose each portion of the image sensing surface while it is in focus" | Plain-and-ordinary meaning. |

| Term | WSOU's Proposed Construction | Canon's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #6: "manipulating an optical relationship between an optical lens and an image sensing surface so that the image sensing surface is spaced at different effective image distances from the lens"<br><br>U.S. Patent No. 7,493,030, Claims 1, 3<br><br>Proposed by Canon | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance" | Plain-and-ordinary meaning. |
| #7: "maintaining an image sensing surface at a variable effective image distance from a lens …"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon<br>s | Plain and ordinary meaning | "controlling the focus of a lens to bring different portions of the image sensing surface into focus at each portion's effective image distance… | Plain-and-ordinary meaning. |
| #8: "within a continuous exposure frame"<br><br>U.S. Patent No. 7,493,030, Claim 11<br><br>Proposed by Canon | Plain and ordinary meaning | "within the period from the start of an exposure of the imaging sensing surface until the entire image sensing surface is exposed once" | Plain-and-ordinary meaning. |

| Term | WSOU's Proposed Construction | Canon's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #9: "during an exposure frame period"<br><br>U.S. Patent No. 7,493,030, Claim 15<br><br>Proposed by Canon | Plain and ordinary meaning | "during the time over which the entire image sensing surface is exposed once" | Plain-and-ordinary meaning. |